IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NADINE FRANCIS, et al.         :     CIVIL ACTION
                               :
         v.                    :
                               :
JOSEPH HARMON, et al.          :     NO. 13-6009

MEMORANDUM

McLaughlin, J.                                      February 13, 2014

      This is a Section 1983 action brought by a husband and wife against two state troopers and one police officer.  The plaintiffs, Nadine Francis and Odinga Arthur, were driving northbound on I-95 when they were stopped by State Troopers Joseph Harmon and James Sparenga.  Chester Township Police Officer Richard Barth arrived shortly thereafter.  The plaintiffs allege that they were obeying all traffic laws and that the defendants had no reasonable suspicion or probable cause to stop them.  They allege that, even though the plaintiffs cooperated and posed no threat to the officers, the defendants violently pulled Arthur through the front passenger window of the car and shot Francis with a Taser gun.  The plaintiffs allege that they were subsequently arrested and held overnight without probable cause.

      The plaintiffs allege violations of the plaintiffs' rights under Fourth and Fourteenth Amendments.  The plaintiffs

bring claims for unlawful detention, racial profiling, excessive force, false arrest, false imprisonment, and malicious prosecution.  Before the Court is defendant Richard Barth's motion for partial dismissal.  Barth argues that the plaintiffs' malicious prosecution, false arrest, and false imprisonment claims against him should be dismissed.  The Court will deny the motion.

I.   Facts Alleged in the Complaint

Nadine Francis ("Francis") and Odinga Arthur ("Arthur") are a married African-American couple.  On late February 14, 2012, they were driving northbound on I-95 near Chester, Pennsylvania, making a trip from Florida to New York to relocate for Arthur's job.  Francis was driving and obeying all speed limits and traffic laws.  Arthur was sleeping in the front passenger seat.  At approximately midnight on February 15, 2012, State troopers Joseph Harmon and James Sparenga pulled over the plaintiffs' car.  Shortly after the troopers stopped the plaintiffs, Chester Township Police Officer Richard Barth ("Barth") arrived as backup.  Compl. ¶¶ 11-17.

Trooper Harmon asked Francis for her license and registration, and she provided it to him.  The troopers then asked Arthur for his identification.  Arthur did not refuse, but asked the troopers if he could ask a question.  The troopers

refused to allow Arthur to ask a question, and when Arthur did not immediately present his identification, Trooper Harmon ordered Arthur to exit the car.  Id. at ¶¶ 19-22.

Before Arthur could exit the car, Trooper Sparenga began to pull Arthur through the front passenger window by grabbing his neck, causing him to choke.  Upon seeing this, Francis screamed and begged for Trooper Sparenga to stop.  Trooper Harmon took out his Taser gun and shot Francis with it.  Id. at ¶¶ 23-26.

Once Arthur was removed from the vehicle, Trooper Sparenga slammed Arthur into the ground, and kept him face down on the ground while the defendants handcuffed him and removed his wallet.  After Arthur was handcuffed, Trooper Harmon began to interrogate him about how much money he was carrying and where he was going.  Arthur answered all of the questions truthfully.  The defendants then removed Francis from the car and put her face down on the ground, handcuffed her, and interrogated her.  Id. at ¶¶ 30-36.

Throughout this sequence of events, the defendants never informed the plaintiffs as to why they were pulled over.  The plaintiffs did not commit any unlawful acts and never posed a threat to the defendants.  The plaintiffs did not attempt to resist or evade arrest and were not acting violently or dangerously.  The defendants did not have reasonably suspicion

or probable cause to handcuff the plaintiffs.  The defendants did not read the plaintiffs their Miranda rights.  Id. at ¶¶ 16, 18, 24, 27, 31, 32, 34, 37, 38, 39.

After being held outside for a lengthy period of time, Trooper Harmon announced that the plaintiffs' licenses "came up clean."  The plaintiffs were then loaded into the troopers' vehicle and were taken to a police station in Delaware County where they were booked and held overnight.  Id. at ¶¶ 41-42.

The defendants prepared Affidavits of Probable Cause for Francis and Arthur, which contained false statements or omissions.  Based on the Affidavit of Probable Cause prepared by the defendants, Francis was charged with (1) one count of driving in the left land, (2) one count of disregarding traffic lane, (3) one count of disorderly conduct, and (4) one count of resisting arrest.  Based on the Affidavit of Probable Cause prepared by defendants, Arthur was charged with (1) one count of disorderly conduct and (2) one count of resisting arrest.  Following the arraignment on February 15, 2012, the plaintiffs were released on bail.  Id. at ¶¶ 44, 49, 55.

On March 6, 2013, the plaintiffs' motions to quash, that were unopposed by the Delaware County District Attorney, were granted by the Court of Common Pleas of Delaware County.  The criminal proceedings against Francis and Arthur were dismissed.  Id. at 56.

II. Analysis

    A. Standard of Review

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Disregarding any legal conclusions, the court should determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." Id.; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

    B. Malicious Prosecution Claim

In order to prove a malicious prosecution claim under § 1983, a plaintiff must show that (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiffs' favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding. Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007). Defendant Barth argues that the plaintiffs' malicious prosecution claim fails against him because they have not pled that Barth initiated a criminal proceeding.

5

Although prosecutors are typically responsible for initiating criminal proceedings, a police officer "may be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." Henderson v. City of Philadelphia, 853 F. Supp. 2d 514, 518 (E.D. Pa. Mar. 30, 2012) (quoting Brockington v. City of Philadelphia, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005).  A police officer can also be liable for failing to disclose exculpatory evidence or omitting material information from reports.  Telepo v. Palmer Twp., 40 F. Supp. 2d 596, 610 (E.D. Pa. 1999) (quoting Garcia v. Micewski, 1998 WL 547246, at *9 (E.D. Pa. Aug. 24, 1998).

The Complaint alleges that criminal proceedings were initiated against the plaintiffs based on Affidavits of Probable Cause that were prepared by "the defendants," collectively. Compl. ¶¶ 44, 49.  The Complaint alleges that "the defendants" knowingly and deliberately made false statements or omissions in the affidavits," and that the Magistrate Judge relied on these statements in finding probable cause to charge the plaintiffs with various offenses.  Id. at ¶¶ 45-46, 50-51.  The Complaint also alleges that the plaintiffs never acted unlawfully or resisted arrest.

6

Accepting the facts in the Complaint as true and making all reasonable inferences in favor of the plaintiffs, the Complaint sufficiently alleges that Defendant Barth was involved in preparing affidavits that contained false statements, upon which the Magistrate Judge relied in order to arraign the plaintiffs.  According to the Complaint, Barth was present throughout the interrogation and arrest of the plaintiffs, and he participated in preparing the Affidavits of Probable Cause. During the time Barth was present, the plaintiffs did not engage in any unlawful or violent activity and did not resist arrest. Because the Magistrate Judge relied on the statements in the Affidavit of Probable Cause to charge the plaintiffs, it is reasonable to infer that Barth made false statements or omissions or failed to disclose exculpatory evidence in the affidavits.

    C.    <u>False Imprisonment and False Arrest Claims</u>

In order to state a claim for false arrest under the Fourth Amendment, a plaintiff must plead that (1) there was an arrest, and (2) the arrest was made without probable cause. <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 680 (3d Cir. 2012). Also, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment

7

based on a detention pursuant to that arrest." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).

Probable cause "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010). The question of whether probable cause existed is generally a question for the jury, but "a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to [the plaintiff], reasonably would not support a contrary factual finding." Merkle v. Upper Dublin School Dist., 211 F.3d 782, 788 (3d Cir. 2000).

Barth argues that the plaintiffs' false imprisonment and false arrest against him fail because he arrived on the scene as backup and was entitled to rely on the troopers' probable cause determinations. Barth relies on two cases in support of his argument. First, Barth cites the 10th Circuit decision in Stearns v. Clarkson, which held that, "[w]hen one officer requests that another officer assist in executing an arrest, the assisting officer is not required to second guess the requesting officer's probable cause determination, nor is he required to independently determine that probable cause exists." 615 F.3d 1278, 1286 (10th Cir. 2010).

8

Second, Barth cites the Third Circuit decision in Rogers v. Powell, which held that "[w]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." 120 F.3d 446, 455 (3d Cir. 1997). If the arresting officer "never received a clear statement from a fellow law enforcement officer confirming the existence of probable cause for the suspect's arrest," the arresting officer is not entitled to qualified immunity. Id.

In the Third Circuit, therefore, an assisting officer is entitled to qualified immunity in a false arrest or false imprisonment claim if the assisting officer reasonably relied on oral statements by the arresting officer that probable cause exists. Rogers, 120 F.3d at 455; see also Wilson v. Dewees, 2013 WL 5567574, at *5 (E.D. Pa. Oct. 9, 2013). There is no indication in the Complaint that the troopers made oral statements to Barth regarding why they pulled over the plaintiffs or why they were being arrested. See Wilson, 2013 WL 5567574, at *5 ("There is no indication that Officer Dewees made any statements to Officer Brockway about why Plaintiff was being detained or placed into custody. Thus, Officer Brockway's

9

independent probable cause determination must have been based upon his own observations of the scene when he approached.").

Rather, it is reasonable to infer from the Complaint that Barth was capable of making his own determination as to probable cause for arrest. According to the Complaint, Barth arrived shortly after Francis and Arthur were pulled over. He seems to have been present before Francis and Arthur were removed from the car, before they were interrogated, and before they were arrested. The Complaint also alleges that "the defendants" interrogated and arrested the plaintiffs, implying that Barth was an active participant. The Court can therefore infer that Barth participated in the arrest of Francis and Arthur, even though he was capable of determining that they had not violated the law.

NADIN

    D.   <u>Qualified Immunity</u>

The Court finds that Barth's additional arguments regarding qualified immunity are premature. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 131 S.Ct. 2074, 2080 (2011). To determine whether a right was clearly established, the court must ask

"whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011). "A motion to dismiss based on qualified immunity should be denied if there is 'any set of facts plaintiff can prove that would support a denial of immunity.'" Jordan v. Cashman, 2011 WL 2029170, at *6 (E.D. Pa. May 25, 2011) (quoting Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)).

Construing the allegations in the Complaint in favor of the plaintiffs, the plaintiffs have alleged facts supporting a denial of immunity. The plaintiffs have adequately state claims for false arrest, false imprisonment, and malicious prosecution. As discussed above, the Complaint alleges that Barth arrived on the scene shortly after the plaintiffs were pulled over, with time to see for himself that Francis and Arthur were not a threat, were not acting violently, and were not violating the law. There are no allegations indicating that Troopers Harmon and Sparenga made statements to Barth regarding probable cause. Barth participated in the arrest of Francis and Arthur without probable cause, and participated in writing Affidavits of Probable Cause by making false statements or omissions. There are no allegations in the Complaint that would allow the Court to conclude that Barth was acting reasonably

11

under the circumstances.  Barth is free to raise the argument again at the summary judgment stage.

      An appropriate order shall issue separately.